UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MUNGER,

                    Plaintiff,                          Case Number 15-11276

v.                                                      Honorable David M. Lawson

FIRST NATIONAL COLLECTION
BUREAU, INC., and RESURGENT
CAPITAL SERVICES, L.P.,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART PETITIONS FOR ATTORNEY'S FEES

This case is before the court on motions for attorney's fees filed under Federal Rule of Civil Procedure 54(d) and the Fair Debt Collections Practices Act, 15 U.S.C. § 1692k(a)(3). The case was resolved initially when the plaintiff accepted an offer of judgment, in which the defendants offered to pay $3,001, plus the "[p]laintiff's reasonable attorney's fees and costs." The parties have not been able to agree on an amount of those fees and costs, which led to the filing of three petitions for attorney fees separately filed by the five attorneys who appeared for the plaintiff as counsel of record in this case. They are seeking fees and costs in excess of $106,000. They concede that almost all of their billing is derived from or related to work done in contemplation of the class claims that never proceeded. The Court heard oral argument on the petitions on April 21, 2016, and invited counsel to submit additional authority. After reviewing the submissions, the Court concludes that it is not reasonable to allow attorney's fees for work done on a claim that was never advanced because the plaintiff accepted the offer of judgment. No class was certified, and there was no class recovery. Therefore, the petitions for attorney's fees will be allowed only for fees incurred on this case absent the putative class claims, and denied in all other respects.

I.

The underlying case is straightforward.  In 2002, Citibank issued a MasterCard credit card to plaintiff Michael Munger.  Munger failed to pay all of the debt that he accumulated on that card, but he asserts that the statute of limitations on any unpaid amounts had run out, at the latest, by August 7, 2008.  On November 7, 2014, the defendants sent Munger a dunning letter, which stated that it was an attempt to collect amounts due on the delinquent account.  The letter included a "settlement offer" in which the defendants proposed to wipe out the obligation in exchange for monthly payments amounting to a 90% discount on the amount allegedly due.

Munger asserts that the defendants knew or should have known that the statute of limitations had run on his delinquent credit card debt, but they sent him their dunning letter anyway.  He contends that this practice violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e, because the use of the term "settlement offer" in the letter falsely implied that the debt was collectible when it was not, and other language in the letter warning that the defendants were "not obligated to renew [the] offer" deceptively instilled a sense that the recipient had limited time to respond and accept the offer to "settle" the debt.  In his prayer for relief, the plaintiff sought statutory damages and costs and attorney fees.

The plaintiff filed his complaint in this case on April 3, 2015, alleging in a single count violations of the FDCPA, 15 U.S.C. § 1692e, based on the allegedly deceptive communications in the defendants' dunning letter.  He filed a first amended complaint on April 4, 2015, and, after discovery revealed the possible involvement of a second defendant entity in the case, he filed a second amended complaint on July 24, 2015.  On April 27, 2015, the plaintiff also had filed a motion to certify a class of consumers who received letters similar to the one sent to him by the defendants.

-2-

The parties litigated several discovery disputes over information relating to the scope of the putative class that the plaintiff sought to certify. After a status conference with the Court on November 19, 2015, the plaintiff withdrew the motion for class certification, and the Court set a deadline of December 15, 2015 for the plaintiff to file a revised motion.

On December 14, 2015, the plaintiff filed a notice that the defendant had offered, and he had accepted, an offer of judgment in the amount of $3,001 in full satisfaction of all his individual claims. Accordingly, on December 15, 2015, the Court entered judgment in his favor for that amount.

The offer of judgment included a provision to pay the "Plaintiff's reasonable attorneys' fees and costs incurred via Plaintiff's claims against Defendants in this matter," and it stated that if the parties could not agree on the amount of those fees, then the plaintiff would file an application for approval of fees by the Court. The parties did not reach an agreement, and, on December 18, 2015, the plaintiff's attorneys separately filed three fee applications seeking a total of $106,068.75 in attorney fees and $457.19 in costs. Those amounts represent the following proposed billings: (1) by the law firm Roy, Schechter & Vocht, P.C., 161.75 hours of work by three attorneys at the firm, at a rate of $525 per hour, for a total of $84,918.75 in attorney fees, plus costs of $457.19; (2) by attorney David S. Parnell, 63.25 hours at a rate of $200 per hour, for a total of $12,650; and (3) by attorney Sean O'Mara, 42.5 hours at $200 per hour, for a total of $8,500.

The plaintiff's attorneys assert that their proposed billings are reasonable and justified in light of the efforts expended in the litigation of this case. They explain that they submitted multiple fee applications rather than a consolidated petition because the separate counsel involved do not

have the required personal knowledge of each others' various billings in the case to compose a proper affidavit in support of a single petition.

The defendants argue that (1) the billing records submitted by plaintiff's counsel are inexcusably vague and fail in many cases to identify the precise subject matter of and justification for the hours billed; (2) pervasive "rounding up" in the billing entries due to use of a 15-minute billing increment further inflates the hours claimed, without any plausible justification; (3) the claimed rate of $525 per hour for plaintiff's lead attorneys is excessive and unjustified in light of the prevailing market rates for similar work; and (4) nothing in the record of proceedings in this case suggests any plausible justification for the plaintiff having five attorneys to represent him, and many of the time entries represent either unnecessary duplication of effort or excessive overhead attributed to "coordination" of the various attorneys' efforts.

## II.

Federal Rule of Civil Procedure 54(d) states that requests for attorney's fees must be made by motion, which must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(A), (2)(B)(ii). The FDCPA authorizes the Court to award to a prevailing plaintiff in an FDCPA case "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).

The first step for a district court "[i]n setting an award of attorneys' fees," ordinarily is to "arrive at the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983) (noting that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours

-4-

reasonably expended on the litigation multiplied by a reasonable hourly rate")).  "The party seeking attorney's fees 'bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'"  *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437).  "The key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *Inwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008).  The trial judge must "question the time, expertise, and professional work of [the] lawyer" applying for fees.  *Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir. 1980).  And, in calculating the appropriate award, "the district court is required to give a clear explanation," as to its reasoning.  *Moore v. Freeman,* 355 F.3d 558, 566 (6th Cir. 2004).

However, "trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Ibid.*  "So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Ibid.*  Thus, "there is no requirement . . . that district courts identify and justify each disallowed hour."  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (citing *New York State Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).  "Nor is there any requirement that district courts announce what hours are permitted for each legal task."  *Ibid.*  Instead, the Supreme Court has held that "a concise but clear explanation" of a district court's reasons for a fee award, *Hensley*, 461 U.S. at 437, may include findings of "unnecessary, unreasonable or unproductive time," that "the time spent on the particular activity was

-5-

'excessive,'" or that a less amount of time was "reasonable," *see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 554 n.2, 566-67 (1986).

The second component of the lodestar is the hourly rate. *Hensley*, 461 U.S. at 433. Generally, a reasonable hourly rate is calculated by reference to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). The plaintiff submitted hourly rate survey data compiled by the State Bar of Michigan, and the parties have not disputed that the State Bar's market survey is informative on the issue of reasonable attorney's fees.

After calculating the lodestar amount, "[t]he court should then exclude excessive, redundant, or otherwise unnecessary hours." *U.S. Structures*, 130 F.3d at 1193. "Next, the resulting sum should be adjusted to reflect the 'result obtained.'" *Ibid.* "This involves the following of two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Ibid.*

> [If] a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.
> . . .
> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.

*Hensley*, 461 U.S. at 436-37.

-6-

A.

The main issue presented in this case in determining the hours reasonably expended on the case is whether the plaintiff is entitled to attorney's fees for the time spent on developing the aborted class claims, when no class was certified, and there was no class recovery.  The answer must be "No."  The class claims in this case were withdrawn, apparently, as explained by plaintiff's counsel at oral argument, because Mr. Munger did not want to pursue them after he was presented with the offer of judgment.  Those claims were unsuccessful by any understanding of the term.  The Supreme Court has explained that "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" *Hensley*, 461 U.S. at 435 (citation omitted), and therefore is not compensable under fee-shifting statutes.  It is common in cases where a class is decertified or no class recovery is realized to disallow the time spent on class issues.  *See, e.g., Asmar v. Benchmark Literacy Grp., Inc.*, No. 04-70711, 2007 WL 925623, at *3 (E.D. Mich. Mar. 28, 2007) (holding that because the class was decertified, "those hours expended related to class certification and notice issues are not reasonable in light of the final results in this case") (citing *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 767-68 (4th Cir. 1998), *rev'd on other grounds,* 527 U.S. 1031 (1999)); *Gradisher v. Check Enf't Unit, Inc.*, No. 00-401, 2003 WL 187416, at *7 (W.D. Mich. Jan. 22, 2003) (excluding time spent on class certification issues because "[e]ven though a class was certified, no recovery was made on behalf of the class because the Court ultimately decertified the class").

The plaintiff's attorneys filed a supplemental brief citing a single unpublished case from the Fourth Circuit, *Randle v. H & P Capital, Inc.*, 513 F. App'x 282, 283 (4th Cir. 2013), in which $74,000 in attorney fees were awarded on a $6,000 recovery.  The complaint in that case set forth

a putative class definition, but no class was certified. Instead, the plaintiff settled her individual claims while the defendant's motion for summary judgment was pending.

On its face the case may seem to provide support for the plaintiff here. However, looking deeper into the record of proceedings in the district court, the case is readily distinguishable. It is true that the complaint was filed as a putative class action. But the issue of class certification never was broached, because the defendant decided, rather than addressing the merits of the claims or the scope of the class, to make its initial assault on the complaint with a broadside attack on the constitutionality of the FDCPA. The district court isolated the constitutional issue and ordered the defendant to file a motion for summary judgment, which was litigated, it appears, at some length. After the hearing and while that motion still was pending, the parties settled the case.

The plaintiff noted in her motion for attorney's fees that her counsel's billing records did not reflect any entries relating to the development of class claims. Nevertheless, plaintiff's counsel voluntarily reduced their billing by 10% to account for any work that might have been incidentally related to the class and not the individual claims.

On appeal, the defendant argued that the district court had awarded a "mountain" of attorney fees, for a "molehill" of a case. The court of appeals disagreed, echoing the reasoning of the magistrate judge who had issued a report recommending granting the attorney fee motion. The court concluded that the fees incurred were reasonable in light of the litigation strategy pursued by the defendant, and were not disproportionate in light of the work needed to respond to the constitutional challenge. Although *Randle* was a case where counsel filed a putative class action complaint and recovered substantial fees against a modest recovery for their client, the extent of those fees had

nothing to do with class claims, and everything to do with the difficulties caused by the defendant's dilatory litigation strategy.

Here, the requests for fees by the plaintiff's five attorneys in this case are not reasonable. The petitions include extensive discussions of the efforts made by plaintiff's counsel to obtain and review discovery relating to the scope of the proposed class in this case, while glossing over the fact that the class was never more than that — proposed. They have cited no authority for the apparently novel proposition that they should be allowed to collect fees relating to contemplated representation of a class of plaintiffs in an action where no class ever was certified, and where no recovery for any class members was secured. Therefore, the Court will disallow the claim for time spent on the class issues.

Although other time may be compensable, the plaintiff's attorneys made no attempt in their petitions to designate the hours of their work that were attributable to the plaintiff's individual claims versus the speculative class litigation. The only hours that plainly can be attributed to Michael Munger's individual claims are the five and a half hours billed by plaintiff's lead counsel for drafting and revising the original complaint. Nothing in the petitions suggests why any of the other hundreds of hours of billings that the plaintiff's attorneys seek payment for were in any way reasonably necessary to the development or litigation of the simple and straightforward individual claims advanced in that original pleading. There is no reason apparent from the pleadings why the uncomplicated statutory claim pleaded by Mr. Munger would take competent counsel five and a half hours to compose, but the time is not facially excessive when allowing for an adequate inquiry into the relevant facts and law. Additional time was spent drafting initial disclosures and attending case conferences with the Court. Sifting through the time records, however, does not produce a definitive

-9-

block of time for these activities.  Nonetheless, a fair estimate of the time necessary to complete those tasks is about ten hours, which would achieve the "rough justice" generally applied to such determinations. *Fox*, 563 U.S. at 838.

### B.

The plaintiff's attorneys request fees at various hourly rates from $525 for lead counsel to $200 for assisting counsel.  According to the State Bar of Michigan Economics of Law Practice survey data submitted by the plaintiff's attorneys, the rate of $525 per hour proposed by plaintiff's lead attorneys is the 95th percentile figure for all attorneys engaged in civil litigation in the State of Michigan, and is well above the 95th percentile figure of $450 per hour for attorneys in "general practice."  The plaintiff's attorneys have many years of experience.  Although the claim on which judgment was entered can be characterized as routine, lead counsel (who, presumably, performed the drafting and filing work allowed by this order) have demonstrated that they qualify for compensation at the high end of the range of fees reported in the survey.

### C.

Based on 15.5 hours of billable work at $525 per hour, the lodestar amount is $8,137.50. That amount is not plainly excessive compared with the successful recovery of $3,001 on the plaintiff's individual claim.  It represents a 92% reduction in the amount sought by plaintiff's counsel, but such extreme shearing is appropriate where the proposed billing embodies equally extreme overreaching.  As the Supreme Court held in *Hensley*, "the most critical factor [in adjusting the amount of the award] is the degree of success obtained," and a significant reduction is warranted here in light of the "limited success" secured.  461 U.S. at 436-37; *see Dean v. F.P. Allega Concrete Const. Corp.*, 622 F. App'x 557, 558 (6th Cir. 2015) (holding that the district court's award of more

-10-

than $25,000 in attorney fees where the jury awarded the plaintiff $117 on just one of his claims under the FLSA was an abuse of discretion, and noting that the district court made no effort to adjust the fee request to account for the "modest degree of success" achieved).

The fees should be allocated among counsel according to the compensable work they performed.  The plaintiff is entitled to his costs of $457.19.

III.

Attorney's fees claimed for work performed on class issues are not compensable in this case. The plaintiff's attorneys are entitled to attorney's fees and costs totaling $8,594.69.

Accordingly, it is **ORDERED** that the plaintiff's petitions for attorney's fees [dkt. #63, 64, 65] are **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff shall recover of the defendants attorney's fees and costs totaling $8,594.69, awarded jointly to the plaintiff and his attorneys.  The petitions are **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 25, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 25, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI